AUDREY STRAUSS
Acting United States Attorney for
the Southern District of New York
By: JASON M. SWERGOLD
Assistant United States Attorney
300 Quarropas Street
White Plains, New York 10601
Tel. (914) 993-1963

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                       :
UNITED STATES OF AMERICA               :   VERIFIED COMPLAINT FOR
                                           <u>FORFEITURE</u>
          v.                           :
                                       :   20 Civ. 10722
$20,000 IN UNITED STATES CURRENCY;
                                       :   ECF case
          Defendant-in-rem.
                                       :
------------------------------------- x

Plaintiff United States of America, by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

**I.      JURISDICTION AND VENUE**

1. This is a civil action *in-rem* commenced by the United States of America seeking the forfeiture of $20,000 in United States currency (the "Defendant Currency") seized on or about December 13, 2015. The Defendant Currency is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6), as moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance and all proceeds traceable to such an exchange, or intended to be used to facilitate any violation of Subchapter 1, Chapter 13 of Title 21 of the United States Code.

2. The Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

3. Venue is proper under Title 28, United States Code, Sections 1355(b) and 1395, because acts and omission giving rise to the forfeiture took place in the Southern District of New York.

4. The Defendant Currency is presently held in a United States Treasury suspense account in the custody of the United States Customs and Border Protection.

## II.   PROBABLE CAUSE FOR FORFEITURE

5. On or about December 10, 2015, agents working for Customs and Border Protection ("CBP") performed a physical examination of a shipping container (the "Container") that had arrived at the Port of Palm Beach, Florida (the "Florida Port") from the Dominican Republic. During the examination, CBP agents x-rayed a half pallet of cassava bread and noticed an abnormal density. The CBP agents opened one of the boxes of bread and discovered a white powdery substance, which was field tested and which tested positive for the presence of cocaine. CBP subsequently weighed the cocaine and determined that the cocaine weighed approximately 98 kilograms.

6. On or about December 14, 2015, a Homeland Security Investigations ("HSI") agent acting in an undercover capacity ("UC-1") contacted the phone number listed for the consignee on the Container and spoke with an individual, later identified as JOSE RIVERA ("RIVERA").

7. During the call, UC-1 posed as an individual at the Florida Port who had discovered the cocaine shipment and wanted a sum of money to release the shipment to its ultimate destination.

8.  Over the next few days, UC-1 and RIVERA continued to communicate about the shipment over WhatsApp, an online secure messaging application. On or about December 16, 2015, RIVERA provided UC-1 with a telephone number for another individual, later identified as LUIS MEJIA. UC-1 then spoke with MEJIA, and the two arranged a meeting for the next day. MEJIA also provided UC-1 with the telephone number for another individual in the Dominican Republic ("CC-1"), who was involved in coordinating the cocaine shipment.

9.  On or about December 17, 2015, MEJIA met with another undercover HSI agent ("UC-2") in the vicinity of 34th Street between 7th Avenue and 8th Avenue in New York, New York. Agents conducting surveillance of the meeting observed RIVERA standing by and trailing MEJIA and UC-2. During the meeting, MEJIA and UC-2 arranged to meet at the port in Brooklyn (the "Brooklyn Port"), where MEJIA would pay $40,000 in exchange for the cocaine shipment.

10. On or about December 18 and 19, 2015, UC-1 spoke by telephone with CC-1. During these calls, UC-1 and CC-1 agreed that MEJIA would pay $20,000 up front, and an additional $20,000 after the cocaine shipment was released to MEJIA. On or about December 21, 2015, MEJIA and UC-2 continued to communicate about the transfer of the cocaine shipment. During one of the calls, MEJIA told UC-2, in substance and in part, that he had arranged with CC-1 to pick up approximately $20,000, and that he could meet UC-2 at the Brooklyn Port.

11. At approximately 5:00 p.m. on December 21, 2015, MEJIA and RIVERA arrived at the Brooklyn Port, where they met UC-2 and a third undercover agent (collectively, the UCs). The UCs drove their car into the Brooklyn Port, and MEIJA and RIVERA followed in their own car. Once inside the Brooklyn Port, UC-2 approached MEIJA and RIVERA's car and

was handed $20,000 in cash by MEJIA. MEIJA and RIVERA were then arrested by HSI agents. These funds were subsequently deposited in a U.S. Treasury Suspense account and now constitute the Defendant Currency.

12. Based upon the foregoing, on or about January 20, 2016, MEJIA and RIVERA were charged in a one-count Indictment, 16 Cr. 45 (PKC) (the "Indictment"), with conspiracy to distribute narcotics, in violation of Title 21, United States Code, Section 846 (Count One)(D.E. 16);

13. On or about October 17, 2016, RIVERA pled guilty to Count One and was sentenced on February 22, 2017.

14. On or about November 17, 2016, following a jury trial, MEJIA was found guilty of Count One and was sentenced on April 28, 2017.

15. Based on the foregoing, there is probable cause to believe the Defendant Currency is subject to forfeiture.

### III.   CLAIM FOR FORFEITURE

16. Incorporated herein are the allegations contained in paragraphs one through fifteen of this Verified Complaint.

17. Pursuant to Title 21, United States Code, Section 881(a)(6), all moneys furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate such an exchange, in violation of Subchapter I of Title 21 of the United States Code, are subject to seizure and forfeiture to the United States, and no property right exists in such proceeds.

18. The Defendant Currency is therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6) because it constitutes moneys intended to be furnished

in exchange for a controlled substance, and/or proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate such an exchange, in violation of Subchapter I of Title 21 of the United States Code.

19. By reason of the above, the Defendant Currency became, and is, subject to forfeiture to the United States, pursuant to Title 21, United States Code, Section 881(a)(6).

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Currency and that all persons having an interest in the Defendant Currency be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Currency to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
       December __, 2020

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

By: _____
JASON M. SWERGOLD
Assistant United States Attorney
300 Quarropas Street
White Plains, New York 10601
Tel No. (914) 993-1963

## DECLARATION OF VERIFICATION

DEREK GORECZNY, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Special Agent with the Homeland Security Investigations that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on December 18, 2020

DEREK GORECZNY
Special Agent
Homeland Security Investigations